**Robert MACIOCE and Pittsburgh Cellular Telephone Company, d/b/a A.T. & T. Wireless Services**

**v.**

**The ZONING HEARING BOARD OF THE BOROUGH OF BALDWIN, Pennsylvania**

**v.**

**The Borough of Baldwin, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2004.

Decided May 28, 2004.

Thomas P. McDermott, Pittsburgh for appellant.

James H. Roberts and Kathryn L. Hunter, Pittsburgh, for appellees.

BEFORE: LEADBETTER, Judge, and KELLEY, Senior Judge, and FLAHERTY, Senior Judge.

## OPINION BY Senior Judge KELLEY.

The Borough of Baldwin (Borough) appeals from the order of the Court of Common Pleas of Allegheny County (trial court) which reversed the decision of the Zoning Hearing Board of the Borough of Baldwin (Board), and granted site-specific relief to Robert Macioce (Landowner) and Pittsburgh Cellular Telephone Company d/b/a A.T. & T. Wireless Services (AT & T) to construct a communications facility in the Borough's Planned Residential Zoning District (PRD). We reverse.

Landowner owns a 70–acre parcel of land in the Borough's PRD Zoning District.[1] On March 28, 2000, Landowner and AT & T entered into a lease agreement under which AT & T leased a 100–foot by 100–foot portion of the parcel to construct and operate a wireless communications facility.[2] The proposed facility consists of a 120–foot monopole with nine panel antennas, a 12–foot by 28–foot shelter at the base, and an eight-foot chain link fence surrounding the facility.

On July 10, 2001, Landowner and AT & T filed a challenge to the validity of the Borough's Zoning Ordinance with the Board pursuant to Section 168–59A of the Borough's Zoning Ordinance[3] and Section 916.1(a) of the Pennsylvania Municipalities Planning Code (MPC).[4] Landowner and

---

1. Pursuant to Sections 168–19 through 168–22 of the Borough's Zoning Ordinance, only residential uses are permitted within the PRD Zoning District.

2. On February 17, 1997, the Borough adopted Ordinance No. 708 which amended its Zoning Ordinance to provide for the use of land as a "communication facility." Section 168–12 of the Borough's Zoning Ordinance was amended to define "communications facilities" as "[t]owers, antennas and associated structures operated by any ... corporation ... which furnishes mobile cellular radio telecommunications services ... for public or private use ..." In turn, Sections 168–18A(3)(a)(4), 168–23.4E(1)(d), 168–24B(3)(g), and 168–25B(3)(a)(9) were added to include communications facilities and tower sites as permitted conditional uses in the R–4 Multiple Family Residential Zoning District, the Professional Offices and Professional Services (POPS) Zoning District, the C–1 General Business Zoning District and the C–2 Shopping Center Zoning District.

3. Section 168–59A of the Borough's Zoning Ordinance provides, in pertinent part, that "[t]he Board shall hear challenges to the validity of a zoning ordinance ... In all such challenges, the Board shall take evidence and make a record thereon ... At the conclusion of the hearing, the Board shall decide all contested questions and shall make findings on all relevant issues of fact which shall be-

come part of the record on appeal to the court."

4. Act of July 31, 1968, P.L. 805, *added by* Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10916.1. Section 916.1 of the MPC provides, in pertinent part:

(a) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge ...:
 (1) to the zoning hearing board under section 909.1(a) ...

\* \* \*

(c) The submissions referred to in subsection[](a) ... shall be governed by the following:
 (1) In challenges before the zoning hearing board, the challenging party shall make a written request to the board that it hold a hearing on its challenge. The request shall contain the reasons for the challenge ...

\* \* \*

 (5) Based upon the testimony presented at the hearing or hearings, ... the zoning board ... shall determine whether the challenged ordinance or map is defective, as alleged by the landowner ... If a challenge heard by a zoning hearing board is found to have merit, the decision of the zoning hear-

AT & T alleged that the Zoning Ordinance resulted in a *de facto* exclusion of communications facilities, that it violated the provisions of the Federal Telecommunications Act of 1996 (Telecommunications Act)[5] and, as a result, Landowner and AT & T are entitled to site-specific relief permitting the construction of the proposed communication facility on the proposed site.

With respect to the former claim, Landowner and AT & T alleged that when all of the requirements of Section 168–46.1 of the Borough's Zoning Ordinance were applied to all of the suitable undeveloped lots located in the Borough's R–4, POPS, C–1 and C–2 Zoning Districts, less than 1% of the land in the Borough could be used as a communications facility.[6] With respect to

ing board shall include recommended amendments to the challenged ordinance which will cure the defects found. . . .

In turn, Section 909.1 of the MPC provides, in pertinent part:

(a) The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

(1) Substantive challenges to the validity of any land use ordinance . . .

53 P.S. § 10909.1(a)(1).

5. 47 U.S.C. §§ 160–614.

6. Regarding a conditional use as a communications facility, Section 168–46.1 of the Borough's Zoning Ordinance was added and provides, in pertinent part:

The granting of a conditional use for communications facilities and tower sites shall be subject to the following express standards and criteria.

A. The minimum tower site shall be two acres.

B. No tower shall be located within 250 feet of an existing dwelling, or of the property line of a RA or RB Zoning District, or 500 feet of an existing school, hospital or similar use measured from the nearest property line to the nearest property line.

C. No such tower shall be erected within 2,000 feet of another existing tower measured from the property line of the tower site to the nearest property line of an existing tower.

D. Shared use of towers and structures shall be encouraged . . .

E. Communications facilities and their associated structures may exceed the height limitations of the district, subject, however, to § 168–33B hereof, provided that they shall be set back from any property line or public street right of way a minimum distance of 100% of the tower height or greater . . .

F. Unless the communications facility is located on a building, the tower structure shall be completely enclosed by a six-foot high chain link or similar fence with self-latching gate . . .

G. All guy wires and all guyed towers shall be clearly marked so as to be visible at all times. All guy wires shall be located a minimum of 100 feet from any property line.

H. The applicant shall submit evidence that the . . . tower upon which an antenna is to be constructed, has been designed by a registered engineer, and is certified by a registered engineer and is certified by that registered engineer to be structurally sound and able to withstand wind and other loads in accordance with accepted engineering practice . . .

I. The tower shall be subject to any applicable Federal Aviation Administration (FAA) and airport zoning regulations.

J. No sign or other structure shall be mounted on the tower, except as may be required and approved by the FCC, FAA or other governmental agency.

K. All lighting, except required beacons, shall be shielded and reflected away from adjoining properties.

L. A minimum of two off-street parking spaces shall be provided on the tower site, plus one off-street parking space for each on-site personnel.

M. Existing vegetation on the site shall be preserved to the maximum extent possible . . .

N. A minimum twenty-foot (in width) easement or right-of-way for access shall be provided to the tower which is adequate to accommodate maintenance and emergency vehicles and which is improved with a dust-free, all-weather (chip and shot) surface sufficient to accommodate the weight of the vehicles proposed to use the easement or right-of-way.

the latter claim, Landowner and AT & T alleged that the Borough had violated Section 332(c)(7)(B)(i)(11) of the Telecommunications Act [7] by "[p]rohibit[ing] or having the effect of prohibiting the provision of personal wireless services." Hearings before the Board ensued.

On December 24, 2001, the Board issued a decision disposing of the validity challenge in which it made the following relevant findings of fact:

8. On February 17, 1997, the Borough adopted Ordinance No. 708 permitting the development of *communications facilities and tower sites* as conditional uses in certain districts and establishing standards and criteria for granting such conditional uses ...

9. Section 2 of Ordinance No. 708 permits communications facilities and tower sites as conditional uses in "residential districts," "commercial districts" and "industrial districts" within the Borough.

10. Ordinance No. 708 does not permit communications facilities and tower sites in PRD and POPS zoning districts.

11. Section 4 of Ordinance No. 708 sets forth specific standards and criteria for the granting of conditional uses for communications facilities and tower sites ...

12. [Landowner and AT & T] have *not offered any evidence* that would tend to satisfy the enumerated standards and criteria for the grant of either a conditional use or a use or dimensional variance as set forth in the Borough Ordinance or the law set forth in the [MPC]. In any event the granting or denial of a conditional use is not within the jurisdiction of this [Board] because it is a matter that must be submitted to the Borough Planning Commission and thereafter to the Borough Council.

Board Decision at 2.

Based on the foregoing, the Board made the following relevant conclusions of law:

(C) The Borough Zoning Ordinance is presumed valid under the law and the challengers to the constitutionality of the zoning ordinance bear a heavy burden of proof and they must demonstrate that the Ordinance completely excludes their proposed legitimate uses. [Landowner and AT & T] have not sustained their burden of proof.

(D) The Borough Zoning Ordinance is not an exclusionary ordinance, but it does legally confine a type of activity, to wit, communications facilities and tower sites, to particular locations in the Borough. Therefore, there is not a total prohibition of such land use within the Borough.

(E) Ordinance No. 708 established identifiable criteria that the governing body will apply in evaluating an applicant's proposed land use, and in this case, the Ordinance sets forth the standards and criteria that the Borough Planning Commission and Council must utilize in determining whether [Landowner and AT & T] are entitled to a conditional use of the proposed site for the construction and operation of a communications facility and tower site.

(F) The Borough Zoning Ordinance, as amended by Ordinance No. 708, is

---

O. In the event that any tower ceases to be used as a communication facility for a period of six months, then the owner and/or operator of the tower or the owner of the land on which the tower is located shall be required to remove the same ...

P. The construction, erection, operation and maintenance shall comply with all applicable laws and regulations of the commonwealth ...

**7.** 47 U.S.C. § 332(c)(7)(B)(i)(II).

constitutionally valid and enforceable. Since it is not constitutionally invalid, [Landowner and AT & T] are not entitled to site-specific relief. This Ordinance does not violate the [Telecommunications Act].

*Id.* at 2–3. As a result, the Board denied the request of Landowner and AT & T to declare the Zoning Ordinance invalid and for site-specific relief. *Id.* at 3.

On January 22, 2002, Landowner and AT & T appealed the Board's decision to the trial court. On February 20, 2002, the Borough filed a notice of intervention in the appeal.

On May 21, 2003, the trial court issued an order and opinion disposing of the appeal in which it stated the following, in pertinent part:

Although not exclusionary on its face, [Landowner and AT & T] contend the Ordinance is exclusionary in fact and therefore invalid because once all of the requirements and restrictions contained in the Zoning Ordinance that relate to communications facilities are applied, less than 1% of the total parcels and acreage in the Borough are eligible for the location of a communications facility. In arriving at this conclusion, [Landowner and AT & T] considered available parcels partly or fully located in C–1, C–2, POPS or R–4 Zoning Districts which were two acres or greater in size. In

coming to their decision, the Zoning Board referred to Ordinance No. 708 which adds "Communications Facilities" as conditional uses to I1 and I2 Zoning Districts. Although [Landowner and AT & T] did not include these additional areas in their calculations, the conclusion drawn by [Landowner and AT & T] is still valid. The majority of the additional area zoned I1 and I2 is in low lying areas where construction of a communications facility such as the one sought by [Landowner and AT & T] would not be feasible. Because the additional useable area provided by the inclusion of I1 and I2 areas is negligible, the [Landowner's and AT & T]'s failure to include those areas does not change the exclusionary nature of the Zoning Ordinance.

Trial Court Opinion at 2.

 Thus, the trial court found:

[I]n considering the total land in the Borough, [Landowner and AT & T] found less than 1% was available for a communications facility once all of the zoning restrictions were taken into consideration.

For the reasons stated above, this court finds that the [Borough's] Zoning Ordinance concerning permissible sites for communications facilities exclusionary in fact and therefore invalid.

*Id.* at 4.[8] Accordingly, the trial court entered an order reversing the Board's deci-

---

**8.** It is evident from the foregoing that the trial court made findings of fact not contained in the Board's decision. It was entirely proper for the trial court to do so. *See* Section 1005–A of the MPC, 53 P.S. § 11005–A ("[I]f the record does not include findings of fact ... the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any."); *Eastern Consolidation and Distribution Services, Inc. v. Board of Commissioners of Hampden Township*, 701 A.2d 621, 623 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 553 Pa. 683, 717 A.2d 535 (1998) ("[W]e have

held that the court may make the necessary findings under the MPC, where the board has not, even if it takes no additional evidence. *Ford v. Zoning Hearing Board of Caernarvon Township*, [151 Pa.Cmwlth 323, 616 A.2d 1089 (1992)]."); *Snyder v. Railroad Borough*, 59 Pa.Cmwlth. 385, 430 A.2d 339, 345 (1981) ("[I]n the instant case, the lower court did not disturb any findings, but added one, citing as its authority for so doing, *Hess v. Upper Oxford Township*, [17 Pa.Cmwlth. 399, 332 A.2d 836, 838 (1975)]), where this Court said, '(a)s Section 1010[,the predecessor to Section

sion, and granting Landowner and AT & T site-specific relief to construct the proposed communications facility. *Id.* at 5. The Borough then filed the instant appeal of the trial court's order.[9]

In this appeal, the Borough claims: (1) the trial court erred in determining that the Borough's Zoning Ordinance was *de facto* exclusionary; and (2) even if it is assumed that the Zoning Ordinance is *de facto* exclusionary, the trial court erred in granting Landowner and AT & T site-specific relief.[10]

With regard to the purported invalidity of local zoning ordinances, as alleged in the instant case, it has been noted:

[T]he law applicable to this kind of claim is well settled. Zoning ordinances in Pennsylvania enjoy a presumption of constitutionality and validity, and the party challenging one bears the "heavy burden" of proving otherwise. *See* [*APT Pittsburgh Limited Partnership v. Penn Township,* 196 F.3d 469, 475 (3rd Cir.1999)] (quoting *Benham v. Board of*

*Supervisors of Middletown Township,* [22 Pa.Cmwlth. 245, 349 A.2d 484, 487 (1975)); *see also Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328, 335 (1975); *Beaver Gasoline Co. v. Zoning Hearing Board of the Borough of Osborne,* 445 Pa. 571, 285 A.2d 501, 503–04 (1971) ("the validity of a zoning ordinance is presumed and ... the burden of establishing its invalidity is upon the party who seeks to have it declared invalid.").

In order to overcome this presumption of constitutionality, the challenger must demonstrate that "the ordinance totally excludes an otherwise legitimate use." *Farrell v. Worcester Township Board of Supervisors,* [85 Pa.Cmwlth 163, 481 A.2d 986, 989 (1984)]. "Unless the challenger demonstrates that the ordinance in question completely or effectively excludes a legitimate use, ... the challenger has failed to carry its burden...." *Ficco v. Board of Supervisors of Hempfield Township,* 677 A.2d 897, 899 (Pa.Cmwlth.1996) (citing *BAC, Inc.*

1005–A,] precludes a remand to the governing body in validity challenges under Section 1004, we hold it to be the duty of the lower court to make appropriate findings of fact in order to enable meaningful review."

**9.** Our scope of review in this case is whether the trial court committed an abuse of discretion or an error of law. *Eastern Consolidation and Distribution Services, Inc.* In addition, assuming that the record demonstrates the existence of substantial evidence, the Court is bound by the findings of fact made below which are the result of resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence. *Snyder.*

**10.** The Borough also asserts that its Zoning Ordinance does not violate the provisions of the Telecommunications Act. As noted above, Landowner and AT & T raised a claim with respect to the Telecommunications Act in the validity challenge that was filed with the Board. *See* Reproduced Record (RR) at 29–

32. However, as noted by Landowner and AT & T in their appellate brief:

Much of the Borough's brief addresses the [Telecommunications Act] which, although mentioned by Appellees in their Validity Challenge, was not actively pursued before the Board or the court below. Appellees relied below, and now before this Court, upon Pennsylvania law and its clear prohibition against de facto exclusionary and unduly restrictive zoning.

Brief for Appellees at 12 fn. 6. As neither the Board nor the trial court considered this claim, it will not be addressed for the first time by this Court in the instant appeal. *See, e.g.,* Pa.R.A.P. 302(a) ("[I]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Insurance Company of Evanston v. Bowers,* 758 A.2d 213, 221 (Pa.Super.2000) ("[G]enerally, an issue once raised must be preserved at each stage of the case. Since the trial court was not given the opportunity to address this issue in the first instance, we have nothing left to review.") (citations omitted).

v. Board of Supervisors of Millcreek Township, 534 Pa. 381, 633 A.2d 144 (1993)); Overstreet v. Zoning Hearing Board of Schuylkill Township, [152 Pa. Cmwlth 90, 618 A.2d 1108 (1992)]. To prove total or effective exclusion of a permitted use, the challenger can show that the ordinance is either de jure or de facto exclusionary:

> De jure exclusion exists where an ordinance, on its face, totally bans a legitimate use. De facto exclusion exists where an ordinance permits a use on its face, but when applied acts to prohibit the use throughout the municipality.

Penn Township, 196 F.3d at 475 (internal quotations and citations omitted).

If the challenger is able to establish that the ordinance excludes the use in question, the burden then shifts to the state or locality "to demonstrate that the zoning ordinance '[b]ears a substantial relationship to public health, safety, and welfare.'" Id. (quoting Borough of Edgewood v. Lamanti's Pizzeria, [124 Pa.Cmwlth. 325, 556 A.2d 22, 24 (1989)]); 53 P.S. § 10916.1(a)(5)(i)-(v); see also Fernley v. Board of Supervisors of Schuylkill Township, 509 Pa. 413, 502 A.2d 585, 587 (1985) ("Where the challenger proves a total prohibition of a legitimate use, the burden shifts to the municipality to establish that the prohibition promotes public health, safety, morals and general welfare.") (citing Beaver Gasoline, 285 A.2d at 503); El-

lick v. Board of Supervisors, [17 Pa. Cmwlth. 404, 333 A.2d 239, 243-44 (1975)].

Omnipoint Communications Enterprises v. Zoning Hearing Board of Easttown Township, 248 F.3d 101, 106-107 (3rd Cir. 2001).

As noted above, the Borough first claims that the trial court erred in determining that its Zoning Ordinance is de facto exclusionary. In the proceedings below, Landowner and AT & T asserted that the Zoning Ordinance is de facto exclusionary in that it fails to provide a "fair share" of Borough land for a communications facility use.[11] In particular, Landowner and AT & T alleged that although the ordinance provides for "communications facilities" as a conditional use in Section 168–46.1, such a use is only permitted on less than½ of 1% of all of the parcels or total land in the Borough when all of the restrictions in that section are applied. Indeed, it was on this basis alone that the trial court determined that the Zoning Ordinance was unconstitutionally exclusionary and reversed the Board's decision. See Trial Court Opinion at 3, 4.

As the Pennsylvania Supreme Court has noted:

> The "fair share" test ... was judicially developed as a means of analyzing zoning ordinances which effect a partial ban that amounts to a de facto exclusion of a particular use, as distinguished from

11. At the hearings before the Board, AT & T conceded that it had received conditional use approval from the Borough to place an antenna on top of an apartment building in the southern portion of the Borough, and that another provider, Sprint, had also placed an antenna on a transmission tower in the Borough approximately ½—mile east of the proposed site. See RR at 0168–0169, 0181, 0263–0264; Exhibit 8, RR at 0486. In fact, it was never AT & T's position that there was no

cellular telephone coverage in the Borough. Rather, throughout the proceedings, AT & T sought to place a tower on the proposed site to cover an area of unreliable service in the Borough. See RR at 0056–0057, 0145, 0149–0150, 0169–0171; Exhibit 8, RR at 0486; Exhibit 9, RR at 0487. Indeed, AT & T's Exhibit 9 depicts its extensive coverage area throughout the Borough, and the pockets of unreliable service areas to be corrected by the proposed tower. Id.

those ordinances which provide for a total or *de jure* exclusion. The *de facto* exclusionary doctrine "was intended to foster regional growth by requiring communities located on the fringes of the metropolitan areas to absorb the 'increased responsibility' and 'economic burdens' which time and natural growth invariably bring." Cases involving *de facto* or partially exclusionary zoning turn on the question of whether the provision for a particular use in the ordinance at issue reasonably accommodates the immediate and projected demand for that use ...

*Fernley,* 509 Pa. at 418–419, 502 A.2d at 587–588 (citations and footnote omitted).[12] "[H]owever, we have held in a commercial fair share challenge, 'it is not sufficient for a developer to merely point out that a relatively small area of the municipality is zoned for commercial use without any proof that the needs of the community's residents are not being adequately served.'" *Montgomery Crossing Associates v. Township of Lower Gwynedd,* 758 A.2d 285, 289 (Pa.Cmwlth.2000), *petition for allowance of appeal denied,* 565 Pa. 656, 771 A.2d 1291 (2001) (citation omitted).[13] Thus, it is clear that the trial court erred in reversing the Board's decision on the exclusive basis that "[l]ess than 1% was available for a communications facility once all of the zoning restrictions were taken into consideration." Trial Court Opinion at 4.[14]

**12.** *But cf. Centre Lime and Stone Co., Inc. v. Spring Township Board of Supervisors,* 787 A.2d 1105, 1111 (Pa.Cmwlth.2001), *petition for allowance of appeal denied,* 568 Pa. 740, 798 A.2d 1291 (2002) ("[I]f the zoning exclusion is partial, as in this case, the percentage of community land available under the ordinance for the proposed use becomes relevant. This percentage must be considered in light of the total amount of undeveloped land in the community. Where the amount of land zoned for the proposed use is disproportionately small in relation to the total amount of undeveloped land in the community, the ordinance will be held to be exclusionary.") (citation omitted).

**13.** *See also Omnipoint Communications Enterprises v. Zoning Hearing Board of Easttown Township,* 331 F.3d 386, 394 (3rd Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 1070, 157 L.Ed.2d 894 (2004) ("[O]mnipoint contends that Easttown Township fails to provide a 'fair share' allowance for telecommunications uses. The B–Business District comprises only 1.1% of the total area of Easttown Township. The relevant inquiry is whether Omnipoint has carried its 'heavy burden' of showing that the needs of the community's residents are not being adequately served. Other telecommunications providers have been able to serve the needs of their customers by placing towers within the business district. To overcome the presumption that the ordinance is constitutional, Omnipoint would have had to show a causal link between the small area of land zoned for business use and the community residents' inability to meet their needs ....") (footnote and citations omitted); *APT Pittsburgh Limited Partnership v. Penn Township,* 196 F.3d 469, 477 (3rd Cir.1999) ("[T]he fact that the design APT has chosen for its system enables it to erect the tower that it wishes to build only on a relatively small portion of the land in the M Districts does not make Ordinance 109 exclusionary. Pennsylvania's rule against exclusionary zoning does not impose upon a township the duty to assure that all providers, regardless of the systems they have chosen to construct, will have a suitable site for a functioning tower within the township. To be exclusionary, the ordinance must effectively foreclose not only APT's use, but all use. Yet, APT provided no evidence to the ZHB that other providers could not use any of the 600 acres of M District land to build a tower that would functionally meet their systems' needs. Without such evidence we cannot fault the ZHB for determining that APT had failed to meet its 'heavy burden' to prove that Ordinance 109 was unconstitutionally exclusionary.").

**14.** *See, e.g., Weiner v. Board of Supervisors of Lower Macungie Township,* 119 Pa.Cmwlth. 485, 547 A.2d 833, 836 (1988) ("[W]e reject Appellant's argument that the trial court

Accordingly, the order of the trial court is reversed.[15]

## ORDER

AND NOW, this 28th day of May, 2004, the order of the Court of Common Pleas of Allegheny County, dated May 22, 2003 at No. S.A. 02–83, is REVERSED.

erred in finding that the evidence presented did not satisfy the fair share analysis. As correctly noted by the trial court, the fair share test is 'intended to foster regional growth by requiring communities located on the fringes of the metropolitan areas to absorb the increased responsibility and economic burdens which time and natural growth invariably bring.' Appellant has not established that the 1.2% of Township acreage that is zoned commercial cannot accommodate the Township's 'economic burden', despite his claim that the Township has a projected 90–acre deficit in commercial property.") (citations omitted); *BP Oil, Inc. v. Zoning Hearing Board of the Borough of Brookhaven*, 37 Pa. Cmwlth. 258, 389 A.2d 1220, 1223 (1978) ("[H]ere the Appellant argues that it can sustain its burden by proving that the Borough has failed to provide for its 'fair share' of this use and therefore that a de facto exclusion has occurred. It cites as supporting evidence that 1) only three-tenths of one percent of the land in the Borough is zoned 'B' commercial,

2) there is a need for at least one additional gasoline station, 3) the Borough population is increasing, 4) there is now no vacant land in the 'B' commercial district which could be used for a gasoline station, and 5) the only property in this district which is not presently used for a gasoline station is being used for a hardware store and is not available for other use. Claims involving exclusion of commercial uses, however, can seldom be sustained on the basis of percentage figures alone; some analysis of the present and projected needs of the municipality and some proof that the needs of the community residents are not being adequately served must be present. And we agree with the Board and the lower court that the ordinance here did not set aside an unreasonably small amount of land for that use in relation to the needs of the community.").

15. Based upon our disposition of this issue, we will not reach the other claim raised in this appeal.