Allen SEGAL and Gary
Segal, Appellants,

v.

ZONING HEARING BOARD OF
BUCKINGHAM TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued March 5, 2001.

Decided April 5, 2001.

Neil Andrew Stein, Blue Bell, for appellant.

Craig A. Smith, Newton, for appellee.

Before McGINLEY, Judge, LEADBETTER, Judge, and MIRARCHI, Senior Judge.

McGINLEY, Judge.

Allen Segal and Gary Segal (the Segals) appeal the order of the Court of Common Pleas of Bucks County (common pleas court) which affirmed the Zoning Hearing Board of Buckingham Township's (Board) denial of two of the Segals' variance requests for their property (the Property) in Buckingham Township (Township) where they operate the Buckingham Nursing Home (Home).

The Property is in the AG–1 Agricultural District where the operation of a life care facility is a use by right. The Property contains approximately 62.62 acres with 404.24 feet of road frontage on Durham Road and 217 feet of road frontage on Township Line Road. The Home is 44,260 square feet and contains a 130 bed skilled nursing facility. The area surrounding the Property is predominately residential in nature comprised of single family homes, although it also borders agricultural areas. The Property contains 15.5 acres of wetlands.

The Segals sought to expand the Home by adding thirty skilled nursing beds and thirty assisted living units and to provide 220 independent living units in proposed new buildings located in the rear of the Property. In conjunction with the new buildings, the Segals proposed to construct a road to connect the existing building to the new buildings and a second road to provide access to the Property from Township Line Road. Because of the wetlands, the Segals alleged that it was physically impossible to gain access to the portion of the Property where the proposed buildings would be built without crossing the wetlands and that it was physically impossible to construct a second access to the Proper-

ty without filling a small portion of the wetlands.

Sections 3100.B.6 and 3100.B.7 of the Buckingham Township Zoning Ordinance (Ordinance) prohibit the filling of wetlands and waters of the Commonwealth.[1]

On January 19, 1999, the Segals sought variances from the Board for Sections 3100.B.6 and 3100.B.7. Specifically, the Segals requested variances to disturb 0.02 acres of the waters of the United States to construct a road or lane, to disturb 0.35 acres of wetlands to construct a lane, to disturb 0.02 acres of additional waters of the United States, and to disturb 0.34 acres of waters of the United States in order to provide stabilization of existing stream channels as required under the Buckingham Township Subdivision and Land Development Ordinance.

On March 15, 1995, the Board heard the Segals request for the variances. Mark Geosits (Geosits), an engineer with project design experience, testified on behalf of the Segals that access from Township Line Road was needed as another means of access to the existing facility to avoid running the road through existing parking areas. According to Geosits, a secondary means of access to Township Line Road was appropriate for safety reasons. Notes of Testimony, March 15, 1995, (N.T.) at 15; Reproduced Record (R.R.) at 27a. Geosits also testified that the Segals would substitute approximately one-half acre of additional wetlands. N.T. at 19; R.R. at 31a. On cross-examination, Geosits stated that there were no federal or Pennsylvania highway standards that prohibited a single access for this development. N.T. at 27–29; R.R. at 39a 41a. On redirect, Geosits admitted that if there were only one access, the Segals would still expand the Home. N.T. at 37; R.R. at 49a.[2]

On April 13, 1999, the Board granted a variance for the Segals to fill .02 acres of wetlands to construct a road connecting the Home with the proposed buildings. The Board denied the remaining variance requests. The Board made the following pertinent conclusions of law:

1. 6. Streams, Watercourses, Waters of the Commonwealth, Lakes or Ponds: Such areas shall not be altered, regraded, developed, filled, piped, diverted or built upon.

. . . .

7. Wetlands—Those areas of lands defined as wetlands in either 1) the United States Army Corps of Engineers Technical Report Y87–1, Corps of Engineers Wetlands Delineation Manual; or 2) the United States Environmental Protection Agency Wetlands Identification Delineation Manual, Volume I, Rational, Wetland Parameters, and Overview of Jurisdictional Approach, Volume II, Field Methodology, as most recently updated or modified; or 3) The Pennsylvania Department of Environmental Resources Wetlands Identification and Delineation, Chapter 105 Dam Safety and Waterways Management Rules and Regulations, as most recently updated or modified. Where a difference between the foregoing criteria exist, the most restrictive criteria will be used in any particular case. For the purposes of this definition and for its application to this Ordinance most restrictive criteria shall mean the criteria which causes the preservation of the most extensive area of Wetlands. Soils which may be indicators of wetlands are: Bo Bowmansville silt loam; Ha Hatboro silt loam; Fa Fallsington; Do Doylestown; ToA Towhee; and ToB Towhee Stony.

Resource Protection Ratio for Wetlands– Wetlands shall not be altered, regraded, developed, filled, piped, diverted or built upon. Ordinance, §§ 3100 B.6 and B.7.

2. Larry Schaeffer, a volunteer with the Delaware River Network, spoke against the taking of wetlands. Neighboring residents spoke in opposition to the application. Michael A. Klimpl, Esquire, representing neighboring Wrightstown Township, stated that he did not believe that the variance needed for access to Township Line Road should be granted because the Segals did not meet the basic criteria, specifically in that there was no hardship. N.T. at 51–52; R.R. at 63a–64a.

8. However, with respect to the other areas of proposed disturbance, 'Lane 4,' 'Lane 5' [Both Lane 4 and Lane 5 refer to access to Township Line Road] and the 'stream stabilization' areas depicted on Exhibit A 2, the Board has to conclude that as the Applicants [the Segals] would still design a facility with the same number of additional proposed units whether there is a second means of access or not, that these variances are not necessary to make reasonable use of the Property. There is no evidence of economic detriment or financial hardship to the Applicants [Segals] were the variances denied. *Hertzberg v. Zoning Bd. of Pittsburgh,* 554 Pa. 249, 721 A.2d 43, 47–50 (1998). Therefore, the Board is constrained to deny the variances requested to disturb these areas.

. . . .

10. With respect to the areas of proposed disturbance, at 'Lane 4,' 'Lane 5' and the 'stream stabilization' depicted on Exhibit A 2, the Board concludes that these hardships are self imposed as they arise not from necessity but from the Applicants' [the Segals] desire to have a second street access to the Property from Township Line Road.

. . . .

12. The disturbance proposed to construct a second entrance from Township Line Road would permit the introduction of an entrance for a commercial enterprise between houses on what is a little traveled rural residential street. The traffic would increase on the street. The disturbance in these areas, if authorized, would alter the essential character of the neighborhood along Township Line Road and would impair the appropriate use and enjoyment of their properties by the Township Line Road residents. 53 P.S. § 10901.2.(4).

13. The Variance at the location of 'Lane 1' as noted above, represents a minimal disturbance simply to construct a road connecting the front and rear of the property. The Board has granted this variance because it represents 'the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.' 53 P.S. § 10901.2.(5). For the same reason the Board denies the requested variances at the other locations because these variances are not necessary to afford relief to permit reasonable use of the property. Id.

Zoning Hearing Board of Buckingham Township Decision, April 13, 1999, Conclusions of Law Nos. 8, 10, 12–13 at 9–10; R.R. at 81a–82a.

The Segals appealed to the common pleas court regarding the two variance requests to create the access to Township Line Road.[3] Without taking additional evidence, the common pleas court affirmed and determined:

The Township's obligations regarding variances is determined pursuant to 53 P.S. § 10910.2(2).[4] This section states '[t]hat because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.' Furthermore, 53 P.S. § 10910.2(5) states '. . . the variance, if

---

**3.** The Segals did not appeal the denial of the variance involving stream stabilization.

**4.** Section 910.2(2) of the Pennsylvania Municipalities Planning Code (Code), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. 10910.2(2). This Section was added by the Act of December 21, 1988, P.L. 1329.

authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.' Although Appellants [Segals] assert several viable arguments as to the benefits of an additional driveway it is clear that the project would not be thwarted without it. Testimony was offered that indicated the Appellants would still design and used [sic] the Property the same way. Common Pleas Court Opinion, July 21, 2000, at 3; R.R. at 90a.[5]

■ The Segals contend that the common pleas court erred when it failed to consider their argument that the requested variances should have been granted as de minimis variances, that the Board should have granted the variances as de minimis variances, and that the Segals' ability to construct the buildings without a second access did not require the denial of the requested variances.[6]

■ Initially, the Segals contend that the common pleas court erred when it did not consider their entitlement to a de minimis variance. The Township asserts that the Segals waived this argument because while they did present it to the common pleas court they did not raise it before the Board. The Segals then assert that the Township waived this waiver because it did not assert this argument before the common pleas court. A review of the hearing transcript before the Board indicates that the Segals did not raise this issue although Geosits testified regarding the exact area of the wetlands that would be disturbed,

which, for the two variances at issue here, total 0.37 acres. The record reveals that the Township stated this issue in its brief to the common pleas court. "The Applicants [the Segals] contend before this Court that they are entitled to a de minimis variance. This is an argument neither made before nor considered by the Zoning Hearing Board." Township's Brief to Common Pleas Court at 5.

■ In zoning cases, a new and different theory may not be advanced for the first time on appeal without the permission of the common pleas court. *Myers v. State College Zoning Hearing Board*, 108 Pa.Cmwlth. 624, 530 A.2d 526 (1987). No such allowance was obtained here. We agree with the Township that the Segals waived this issue, and the Township properly raised the issue.

Next, the Segals contend that the Board should have granted the variance because the variances were of such a small size and there was no negative effect on the public interest. The Segals characterize the requested variances as dimensional variances rather than use variances. Examples of dimensional variances include set backs, lot width, building area and impervious surface limitations and minimum lot areas. Robert S. Ryan, Pennsylvania Zoning Law and Practice, § 6.3.1 (1992).

■ A de minimis variance may be granted "in very limited situations where the proposed *dimensional* deviations from the zoning requirement is relatively minor, and where the insistence in rigid compli-

---

5. The common pleas court did not address the Segals' arguments about dimensional variances or de minimis disturbances regarding the wetlands as the common pleas court believed a variance analysis resolved the issue.

6. Because the common pleas court took no additional evidence, our review is limited to a determination of whether the ZHB abused its

discretion or committed an error of law. The ZHB abuses its discretion when its findings are not supported by substantial evidence. *Hitz v. Zoning Hearing Board of South Annville Township*, 734 A.2d 60, 65 n. 9 (Pa. Cmwlth.1999), *petition for allowance of appeal denied*, 562 Pa. 676, 753 A.2d 821 (2000).

ance is not absolutely necessary to preserve the public policy to be obtained." (Emphasis in original). *Evans v. Zoning Hearing Board of the Borough of Spring City*, 732 A.2d 686, 692 n. 5 (Pa.Cmwlth. 1999). "However, there is no general right to a de minimis variance in this Commonwealth, ..., and the decision of whether to grant a de minimis variance is left to the discretion of the local zoning board." (Citations omitted). *Alpine, Inc. v. Abington Township Zoning Hearing Board*, 654 A.2d 186, 191 (Pa.Cmwlth.1995).

 Here, we do not believe that the prohibition against filling wetlands and waters of the United States constitutes a dimensional variance. This prohibition is substantially different in character than a set back. Rather, the Ordinance prohibits the filling of wetlands for other purposes. Therefore, there is no reason to disturb the Board's exercise of its discretion, especially when it does not appear that the question of a de minimis variance was raised and the relief requested differs from the typical de minimis variance request in that the variance is not dimensional.[7]

The Segals also contend that the fact that they can construct the buildings without the variances needed to obtain access to Township Line Road is irrelevant. The Segals assert that under *Hertzberg v. Zoning Board of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), a dimensional variance is not subject to the same standard as a use variance. The Segals assert that they demonstrated that the physical condition unique to the premises (the loca-

tion of the wetlands) resulted in access difficulties which cannot be rectified without the expenditure of substantial sums to construct bridges to span the wetlands.

However, having determined that the requested variance is not dimensional, to obtain a variance, the Segals had to establish the following under Section 910.2 of the Code, 53 P.S. § 910.2:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and the variance is necessary to enable reasonable use of the property.

3) That such unnecessary hardship has not been created by the applicant.

4) That the variance, if authorized, will not alter the essential character of the neighborhood where the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to public welfare.

---

7. We note that the Segals assert that the Township is barred from asserting that the requested variance is not dimensional because the Board determined that the variances were dimensional. The doctrine of judicial estoppel has been applied to prevent a litigant from taking a position in an appeal contrary to the position taken before an ad-

ministrative tribunal. *Ligon v. Middletown Area School District*, 136 Pa.Cmwlth. 566, 584 A.2d 376 (1990). However, the Board acted as the adjudicator in the matter before it. The Township in this Court is essentially an opposing party. The theory of judicial estoppel does not apply.

5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation at issue.

█ To establish an unnecessary hardship, an applicant must prove that either the physical characteristics of the property are such that the property cannot be used for any permitted purpose or only for a permitted purpose at prohibitive expense; or that the characteristics of the property are such that it would have no value or only distress value for any use approved by the zoning ordinance. *Laurento v. Zoning Hearing Board of Borough of West Chester,* 162 Pa.Cmwlth. 226, 638 A.2d 437 (1994).

█ Here, the Board determined the Segals failed to establish an unnecessary hardship and that any hardship was self-imposed, even though the Board believed that the variance was dimensional. Geosits testified that regardless of whether the Segals received the variance they would construct the new buildings. We agree with the common pleas court that the Board's findings are supported by substantial evidence and that the Board did not commit an error of law or an abuse of discretion.

Accordingly, we affirm.

### ORDER

AND NOW, this 5th day of April, 2001, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is affirmed.