Liberty Property Trust          :
                        :
          v.             :
                        :
Lower Nazareth Township and     :
Lower Nazareth Township Board    :
of Supervisors and Cardinal LLC    :
                        :
Appeal of : Lower Nazareth       :
Township and Lower Nazareth      :   No. 214 C.D. 2016
Township Board of Supervisors     :   Argued: September 15, 2016

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE                 FILED: December 9, 2016

        Lower Nazareth Township (Township) and Lower Nazareth Township Board of Supervisors (Board) appeal from an order of the Court of Common Pleas of Northampton County, which reversed a decision of the Board denying Liberty Property Trust's (Liberty) application for conditional use. We vacate and remand.

        Liberty owns real property located in what is defined as a Light Industrial (LI) Zoning District in the Township, and consisting of approximately 51.25 acres. On September 29, 2014, Liberty filed an application for a conditional use permit to build a warehouse/distribution facility on that property. The facility was to consist of two warehouses, one of 225,000 square feet and the other containing 300,000 square feet. The Board held hearings on January 14, 2015,

February 11, 2015, March 11, 2015, and April 8, 2015, with James Wichner (Wichner) testifying on behalf of Liberty as an expert in the subject area of traffic engineering.

The Board issued a written opinion on May 13, 2015, finding Liberty unable to comply with Article I, Sections 118.D(3),(4),(7), and (8) of the Lower Nazareth Township Zoning Ordinance (Ordinance). The Board further found that anticipated weekday truck trips generated by the two warehouses would be greater than one hundred and, therefore, the planned business development was subject to additional requirements of the Ordinance for a truck terminal. (Specifically, in such a case, the property would have to be located within three thousand feet of a ramp of an expressway. Because the property was not so located, it could not comply with these requirements.) As a result, the Board denied Liberty's request for a conditional use.

Liberty appealed this decision to the Court of Common Pleas of Northampton County. Cardinal, LLC (Cardinal), the owner of property located across Nazareth Pike from Liberty's property, was granted permission to intervene in support of the decision of the Board. Following argument on November 9, 2015, and without taking additional testimony, the trial court entered an order on January 25, 2016, reversing the decision of the Board. This appeal followed.[1]

DISCUSSION

The law regarding the grant of a conditional use application is well settled. The existence of a conditional use in a zoning ordinance "evidences a

_____

[1] Where the trial court takes no additional evidence, this court's review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Segal v. Zoning Hearing Board of Buckingham Township,* 771 A.2d 90 (Pa. Cmwlth. 2001).

legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community." *In re Cutler Group, Inc.,* 880 A.2d 39, 42 (Pa. Cmwlth. 2005). An applicant for conditional use has the burden to demonstrate compliance with the specific criteria of the ordinance. *In re Thompson,* 896 A.2d 659, 670 (Pa. Cmwlth. 2006). Once the applicant has met those requirements, it has established a prima facie case, and the application must be granted unless the objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety, and welfare. *Id.*

While resolution of the case *sub judice* primarily rests with a determination of whether the property is subject to the additional requirements of a truck terminal, appellants have raised multiple issues. We will address those in turn.

First the Township and the Board,[2] along with Cardinal, argue the trial court erred in failing to accept the credibility determinations of the Board.

Assuming the record demonstrates the existence of substantial evidence, the court is bound by the municipal body's findings which are the result of resolutions of credibility and conflicting testimony. *In re Thompson*, 896 A.2d at 668. The court may only conclude the Board abused its discretion if its findings are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

Because the Board independently calculated a higher daily truck volume for the property than Wichner, the Board found him not credible. While

---

[2] The Township and Board filed a joint brief. For ease of distinction, a reference to the Township should be deemed to include a reference to the Board in its capacity as appellant. A reference to the Board alone is made to its capacity as fact-finder.

the trial court noted that Wichner's testimony was not contradicted, it did not go so far as to deem him credible. Rather, the trial court found that the conclusions of the Board, which included a credibility determination, were not supported by substantial evidence. As a result, the trial court found that the Board abused its discretion and committed an error of law. (Township Br., Exhibit A at 17-18.)[3]

The Township next argues the trial court erred when it "require[d] or even suggest[ed] that a quasi-judicial adjudicatory body ha[d] the ability or the duty to hire its own expert witness to contradict the testimony of a litigant." (Township Br. at 13.) Under Section 754(b) of the Local Agency Law, a reviewing court may properly reverse if the necessary findings of fact are not supported by substantial evidence. 2 Pa.C.S. § 754(b). Citing this Court's holding in *In re Thompson*, the trial court determined that the Township and Cardinal "failed to present any evidence to prove that this conditional use application is inconsistent with the criteria established by the Ordinance or that the proposed use will substantially affect the health and safety of the community." (Township Br., Exhibit A at 18.) We do not read this as a requirement or suggestion that the Township hire an expert witness. The trial court simply did not find substantial evidence existed to support the Board's conclusion that Liberty could not comply with the requirements of the conditional use.

Both the Township and Cardinal argue that Liberty's development plan is incompatible with Article 7, Section 747.3 of the Nazareth Township Subdivision and Land Development Ordinance (SALDO), and it therefore does not meet the requirements for conditional use.

---

[3] Because the ultimate issue upon which the question of Wichner's credibility was determined is relevant to the remand we are directing, *infra*, we need not address the trial court's finding in this regard.

4

Section 747.3 of the SALDO provides as follows:

"Cul-de-sacs (temporary and permanent), loop roads, and other street networks which have a single point of access to the surrounding road network shall not serve more the twenty-five (25) dwelling units and shall not exceed a total length of more than one thousand (1,000) feet as measured from the centerline of the intersection at the single point of access to the farthest point served."

The trial court found it premature to address any design requirements of SALDO, noting that the SALDO process is separate from the conditional use process. (Township Br., Exhibit A at 20.) The Township argues that the record fails to reflect compliance with Section 747.3. (Township Br. at 18.) Cardinal goes further and states in its brief that Liberty's plan "clearly violates Section 747.3 of the SALDO." (Cardinal Br. at 24.)

We disagree with these arguments. Wichner testified about the possibility of a turnaround for the property, and stated it was one of three potential solutions. (R.R. at 116a-118a.) He further testified that Liberty's preference is to create a new road, (R.R. at 206a), and the solution chosen would satisfy the criteria of the conditional use process. (R.R. 208a.) It is premature to find Liberty unable to comply with the requirements of Section 747.3 based on the evidence in the record, i.e., property necessary for development of an access road has not yet been acquired, development of a cul-de-sac is not a foregone conclusion, etc.

Cardinal next argues the trial court erred in finding Liberty met the criteria set forth in Section 118.D(3), (4), (7), and (8) of the Ordinance.

In denying Liberty's conditional use application, the Board generally found that the proposed use of the property was incompatible with the Ordinance.

5

(R.R. at 27a). Section 118.C of the Ordinance provides that a conditional use shall be approved if adequate evidence is found that the proposed use will meet:

> 1. The standards listed in Section 118.D of the Ordinance;
>
> 2. Any specific standards for the proposed use listed in Article XV;
>
> 3. All other applicable sections of the Ordinance; and
>
> 4. Be capable of meeting all applicable sections of the SALDO and all other applicable Township ordinances.

More specifically, the Board found Liberty's conditional use application failed to meet several performance standards set forth in the Ordinance and Liberty was unable to comply with Article I, Sections 118.D(3),(4), (7), and (8) of the Ordinance. These performance standards are set forth as follows:

> 3. Traffic. Will not result in or significantly add to a significant traffic hazard or significant traffic congestion. See Section 1413 for possible traffic impact study requirement.
>
> 4. Safety. Will not create a significant public safety hazard, including fire, toxic, or explosive hazards.
>
> . . . .
>
> 7. Design. Will involve adequate site design methods, including screening, setbacks and traffic control, to avoid significant negative influences on adjacent uses.
>
> 8. Performance Standards. Will not have a serious threat of future inability to comply with the performance standards of this Ordinance, as stated in Article XVI.

In its opinion, the Board stated that the volume of truck traffic to be generated would "result in significant traffic congestion, create significant public safety hazards, involve inadequate site design, traffic control, and threatens significant negative influences on adjacent uses." (R.R. at 28a.) While a deeper analysis of traffic issues was set forth in the Board's opinion, no such analyses were made of the safety, design, and performance standards. The Board cites no evidence or testimony in the record to support the findings that the proposed use will create public safety hazards, involve inadequate site design, and threaten significant negative influences on adjacent uses. With regard to a future inability to comply with the performance standards of the Ordinance, the opinion of the Board is likewise bereft of facts or testimony from the record that would support a finding that Liberty could not comply with Section 118.D(8). Therefore, it cannot be said the Board's findings in regards to Sections 118.D(4), (7), and (8) are supported by substantial evidence and that the trial court's finding in this regard was in error.

We now turn to an analysis of Section 118.D(3) of the Ordinance, and whether a finding that Liberty cannot comply with that section is supported by substantial evidence. Warehousing or distribution is permitted within the LI district where the property is located, subject to additional requirements, if applicable. The additional requirement at issue here is found in Article XV, Section 1502(A)(69)(c) of the Ordinance, which states that uses which "involve the serving of the use by an average of more than 100 tractor-trailers per weekday shall be required to meet the additional standards in this section for a truck terminal." One of those standards, set forth in Article XV, Section 1502(A)(68)(e) of the Ordinance, is that the main access point for the use must be within three thousand feet of a ramp of an expressway.

7

It is undisputed that the property cannot meet this requirement. At the heart of the matter is whether the property will involve the "serving of the use by an average of more than 100 tractor-trailers per weekday." Wichner testified that during their transportation impact study (TIS), Liberty's experts utilized a Trip Generation Handbook (Handbook) to determine daily truck volumes. (R.R. at 107a.) Wichner further testified that the total volume for both warehouses would be less than one hundred trucks throughout the day. *Id*. It is not clear from Wichner's testimony, however, which table of the Handbook was used to generate those numbers. In its opinion, the Board states the TIS indicated truck counts were derived from Tables A.5 and A.6 found in Appendix A of the Handbook. (R.R. at 29a.) When the Board used Table A.4 to determine daily truck volumes, it found the warehouse would serve 200 daily truck trips. Consequently, weekday daily truck trip generations were not "100 but greater than 100." (R.R. at 30a.) The Board thus concluded that the proposed use of the property would involve an average of more than 100 tractor trailers per day. As the property was not located within three thousand feet of a ramp of an expressway, the Board denied Liberty's conditional use application on that basis.

Liberty contests the finding that more than one hundred trucks per day would service the property, and argues the record supports the opposite conclusion (i.e., Wichner's testimony was uncontradicted (R.R. at 107a, 184a)). Liberty argues that, in industry-standard language, one truck equals two truck trips and the Board's finding that the use generates 200 trips per day confirms Liberty's usage would not serve more than 100 trucks per day. (Appellee Br. at 18.)

Whether Liberty must comply with the standards required of a truck terminal unquestionably hinges on the daily truck volume of the property. In developing its numbers, Liberty utilized one table of the Handbook and determined

8

fewer than one hundred trucks would use the warehouses on a daily basis. The Board utilized a different table and determined that daily truck volume would exceed one hundred trucks per day. On this record, a finding that Liberty must comply with the standards of a truck terminal is not supported by substantial evidence, and we are thus not able to sustain the Board's finding in that regard. Nor are we able to conclude that Liberty is not required to comply, given the discrepancy in daily truck volumes estimated by the parties.

We must, therefore, vacate the findings of the trial court and remand this matter for an evidentiary hearing and determination of daily truck volumes expected for the property. It is for the trial court to assess the credibility of the witness presented and to determine which is the more appropriate standard to be utilized in reaching the conclusion as to this daily truck volume, and to ultimately decide whether the proposed use of the property in question is permitted.

_____
JOSEPH M. COSGROVE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liberty Property Trust                              :
                                                    :
                        v.                          :
                                                    :
Lower Nazareth Township and                         :
Lower Nazareth Township Board                       :
of Supervisors and Cardinal LLC                     :
                                                    :
Appeal of :  Lower Nazareth                         :
Township and Lower Nazareth                         :     No. 214 C.D. 2016
Township Board of Supervisors                       :

O R D E R

AND NOW, this 9th day of December, 2016, the order of the Court of Common Pleas of Northampton County is vacated and this matter is remanded for proceedings consistent with this Opinion.

Jurisdiction is relinquished.

_____
JOSEPH M. COSGROVE, Judge