IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Salford Township           :
                                    :
       v.                    : Nos. 883 and 1162 C.D. 2019
                                      :
Zoning Hearing Board of Upper    :
Salford Township and Cellco       :
Partnership d/b/a Verizon Wireless  :
                                      :
Appeal of: Cellco Partnership d/b/a  :
Verizon Wireless                : ARGUED: June 12, 2020

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                        FILED: July 9, 2020

Cellco Partnership d/b/a Verizon Wireless (Cellco) appeals from the August 12, 2019 order of the Court of Common Pleas of Montgomery County (trial court),[1] reversing the decision of the Upper Salford Township (Township) Zoning Hearing Board (ZHB), which determined that the Township Zoning Ordinance (Township Ordinance) constituted a *de facto* exclusion[2] of cellular communications facilities

---

[1] Cellco appealed the trial court's June 21, 2019 Supplemental Opinion and Decision on July 8, 2019. This Court subsequently directed Cellco to file a praecipe to have the Supplemental Opinion and Decision reduced to an order and entered on the trial court docket. Cellco complied and filed a notice of appeal to the trial court's resultant August 13, 2019 order on August 14, 2019. This second appeal, docketed at 1162 C.D. 2019, was consolidated with 883 C.D. 2019 by order of this Court dated December 4, 2019.

[2] A *de facto* exclusion exists where an ordinance permits a use on its face but, when applied, acts to prohibit the use throughout the municipality. *Macioce v. Zoning Hearing Bd. of the Borough of Baldwin*, 850 A.2d 882, 888 (Pa. Cmwlth. 2004) (internal citations omitted).

within the Township and granted Cellco site-specific relief. After review, we vacate and remand this matter for further proceedings.

## I. Factual and Procedural Background

In November 2017, citing Cellco's "need for wireless coverage and additional capacity" within the Township, Cellco sought to install a 100-foot monopole cell tower with 12 antennae on real property located in the Township's industrial (IN) district. Reproduced Record (R.R.) at 8a. Article III, Section 27-304(A)(3) of the Township Ordinance permits the placement of a cellular communications antenna in any zoning district provided the antenna is attached to the exterior of an existing cell tower or other tall building and the height of the antenna does not exceed the height of the existing structure by more than 15 feet. Upper Salford Township, Pa., Ordinance, ch. 27, art. III, § 27-304(A)(3) (July 14, 2005). Otherwise, a cellular communications antenna is only permitted by special exception in either the light limited industrial (LLI)[3] or limited industrial (LI)[4] districts. R.R. at 11a. Cellco filed an application with the ZHB seeking a use variance on the basis that the LI and LLI districts could not accommodate Cellco's proposed cell tower and antennae. *Id.* at 9a. In the alternative, Cellco sought site-specific relief on the basis that the LI and LLI districts comprised only a small portion of the Township and the Township Ordinance effectively excluded the installation of cell towers within the Township. *Id.* at 11a. Cellco further alleged that the Township Ordinance violated the federal

---

[3] Chapter 27, Article XIV, Section 27-1401(C)(1) of the Township Ordinance permits "Cellular Communications Antennae" by special exception in the LLI district.

[4] Chapter 27, Article XV, Section 27-1501(B)(1) of the Township Ordinance permits "Cellular Communications Antennae" by special exception in the LI district.

2

Telecommunications Act of 1996 (TCA).[5] *Id.* The ZHB held eight separate hearings on Cellco's use variance application.[6]

## A. Cellco's Evidence

Brian Martinelli, a site acquisitions manager for Cellco, testified to the method he used in determining the best location for Cellco's proposed cell tower and antennae. At the outset, Cellco provided Mr. Martinelli a "search ring," or area in which Cellco lacked reliable coverage. R.R. at 117a. Mr. Martinelli then drove through that area looking for suitable structures or vacant land upon which the cell tower and antennae could be located. *Id.* While Mr. Martinelli's preference was to "work with the [Township O]rdinance," he determined that the LI and LLI districts were not viable locations due to their low elevation and placement outside Cellco's search ring. *Id.* at 117a-18a, 148a. Mr. Martinelli considered installing the antennae on existing structures; however, none within Cellco's search ring were deemed tall enough. *Id.* at 131a. All properties or structures Mr. Martinelli considered appropriate for Cellco's telecom facility were located outside the LI and LLI districts, where installation of the cell tower and antennae required a use variance. *Id.* at 119a. Ultimately, Mr. Martinelli selected real property currently occupied by a fire department (the Property) as the ideal site upon which to install the cell tower and antennae. *Id.* at 118a. The fire department would receive enhanced communications service at no extra charge in exchange for permitting the installation of Cellco's cell tower and antennae on the Property. *Id.*

---

[5] 47 U.S.C. §§ 151-624. Section 253(a) of the TCA relevantly provides that local governments may not enact regulations for the purpose of prohibiting the entry of new providers of telecommunications services. 47 U.S.C. § 253(a).

[6] ZHB hearings were held on November 30, 2017, January 8, 2018, February 12, 2018, March 12, 2018, April 30, 2018, June 11, 2018, July 9, 2018, and September 5, 2018.

Michael Fischer, a radio frequency engineer employed as a consultant for Cellco, testified that a ridge bisects the Township. *Id.* at 185a. The LI and LLI districts to the northeast of this ridge lie approximately 150 feet lower in ground elevation than the Property. *Id.* at 252a. Locating the proposed cell tower and antennae in the permitted districts would not resolve Cellco's coverage issues, as coverage would essentially stop at the top of the ridge. *Id.* at 185a, 252a. As a result, the southern portion of the Township would remain devoid of reliable coverage. *Id.* at 252a. Mr. Fischer noted the existence of other cellular communications facilities in neighboring townships that provided some coverage to the Township. *Id.* at 166a. However, these facilities primarily provided coverage to the townships in which they were located. *Id.*

Brian Seidel, a landscape architect appearing on Cellco's behalf, testified that the proposed cell tower would be located "very close" to the ridgeline bisecting the Township. *Id.* at 356a. Installation of the cell tower and antennae at this location would afford coverage to the communities on either side of the ridgeline. *Id.* at 357a.

## B. The Township's Evidence

John Giannini, Chairman of the Township Planning Commission (Commission), testified on behalf of the Township. As provided for in Article XI of the Pennsylvania Municipalities Planning Code (MPC),[7] the Township, along with five other municipalities (Participating Municipalities), is a participant in the Indian Valley Regional Comprehensive Plan (Comprehensive Plan). R.R. at 84a-86a. In his capacity as a member of the Commission, Mr. Giannini was involved with the Township's participation in the Comprehensive Plan. *Id.* at 461a. The

---

[7] Act of July 31, P.L. 805, *as amended*, 53 P.S. §§ 11101 – 11707. Article XI of the MPC relevantly permits municipalities located within a county or counties to enter into intergovernmental cooperative agreements for the implementation of zoning ordinances.

4

Comprehensive Plan addresses the existing land uses available within the Participating Municipalities. *Id.* at 469a. Per the Comprehensive Plan, the Township is primarily designated as a "Rural Resource," which strives to preserve farmland, open space, woodlands, and other cultural and natural resources. *Id.* at 471a-72a. Existing land use under the Comprehensive Plan is broken down into several categories. R.R. at 79a. "Wireless communications facilities" are covered under the category of "Utilities," which is allotted one percent of the total acreage governed by the Comprehensive Plan. *Id.* at 79a, 82a. Mr. Giannini stated that the Township is obligated to enact zoning regulations, including those relating to cell towers, that comply with the policies and goals of the Comprehensive Plan. *Id.* at 472a-74a. With regard to the installation of cell towers, the Commission wished to regulate them to prevent any "threat to the scenic vistas *and the health and welfare of the people.*" *Id.* at 480a (emphasis added). The restrictions imposed on cell towers were not intended to exclude or prohibit their installation but rather to promote development consistent with the Township's designation as a rural resource area. *Id.* at 484a. The Commission reviewed Cellco's variance application and expressed concern that the proposed cell tower would be visible for miles and would not conform with the spirit of the Comprehensive Plan and Ordinance in "conserving vistas and scenic resources." *Id.* at 486a-88a. Mr. Giannini conceded on cross-examination that scenic beauty is a subjective concept. *Id.* at 500a.

### C. First ZHB Decision

The ZHB issued a decision on September 5, 2018, denying Cellco's variance request, as Cellco failed to establish that the Property had unique physical circumstances and could not be used in another manner permitted under the

5

Township Ordinance.[8]  R.R. at 596a.  The ZHB further determined Cellco failed to establish the Township Ordinance violated the TCA, as nothing in the record suggested that other telecommunications providers were not servicing the area in which Cellco's alleged gap in coverage existed.  *Id.* at 597a.

The ZHB agreed with Cellco, however, that the Township Ordinance acted to exclude the proposed use, as there existed no land available in the Township where Cellco could locate the cell tower and antennae that would eliminate the gap in

_____

[8] Section 910.2(a)(1)-(5) of the MPC provides that an applicant seeking a variance must establish:

> (1) **That there are unique physical circumstances or conditions . . . peculiar to the particular property** and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
> (2) That because of such physical circumstances or conditions, **there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance** and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> (3) That such unnecessary hardship has not been created by the appellant.
>
> (4) That the variance . . . will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> (5) That the variance . . . will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a)(1)-(5) (emphasis added).  The ZHB noted that the Property's use for the fire department was permitted under the Township Ordinance.  R.R. at 596a.

6

Cellco's coverage. *Id.* at 598a. The Property was deemed the most appropriate site upon which Cellco could locate the cell tower and, thus, the ZHB granted Cellco's request for site-specific relief.[9] *Id.*

The Township appealed the ZHB's decision to the trial court, arguing the ZHB erred in finding the Township Ordinance was *de facto* exclusionary to cell towers because the ZHB failed to consider the Township Ordinance as it applied to the other municipalities participating in the Comprehensive Plan. Original Record (O.R.) at 9. For this reason, the Township asserted that Cellco failed to prove there were no other sites within the area of the Comprehensive Plan that could be suitable locations for the proposed cell tower. *Id.* The Township further challenged the ZHB's grant of site-specific relief, essentially arguing that the ZHB impermissibly rewrote the Township Ordinance when it concluded the Property was the most appropriate site to locate the cell tower.[10] *Id.* at 11.

---

[9] Pursuant to Section 1006-A(c) of the MPC, a **court** may order site-specific relief, which relevantly provides that, when the court finds that a challenged ordinance unlawfully prevents a use, the court may order the use approved. 53 P.S. § 11006-A(c), added by the Act of December 21, 1988, P.L. 1329. An unreported opinion from a three-judge panel of this Court suggests in dicta that "we believe a zoning hearing board does have jurisdiction to determine site specific relief *on appropriate application.*" *Chester Cty. Outdoor, LLC v. Bd. of Supervisors of Penn Twp.* (Pa. Cmwlth., No. 1599 C.D. 2014, filed July 31, 2014), slip op. at 5, 2014 WL 3778560 (emphasis added). It should be noted that, in addition to requesting use variance relief, Cellco's variance application sought site-specific relief on the basis that the Township Ordinance excluded cell towers as a use within the Township. R.R. at 11a.

[10] The Township does not directly attack the ZHB's authority to order site-specific relief. Rather, it suggests that, by ordering that relief, the ZHB rewrote the Township Ordinance and "usurped the legislative prerogative of the [Township] Board of Supervisors." The Township cited no legal authority for the argument that a zoning hearing board may not order site-specific relief, although the existing jurisprudence is not explicitly clear on this issue.

## D. First Trial Court Decision

The trial court noted that analysis of whether a particular zoning ordinance creates a *de facto* prohibition on a particular use is guided by the two-part test established by our Supreme Court in *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653 (Pa. 2009).[11]  R.R. at 602a.  Pursuant to the *Exeter* test, the party claiming the *de facto* prohibition must first show a particular use is excluded within the township.  *Exeter*, 962 A.2d at 661.  Once the challenger has met this burden of proof, the burden shifts to the municipality to present evidence demonstrating the exclusionary regulation bears a substantial relationship to the health, safety, morality, or welfare of the public.  *Id.*

While the trial court agreed that the evidence presented by Cellco demonstrated a *de facto* exclusion of a specific use, the trial court held that the ZHB made no findings with respect to the second part of the *Exeter* test; namely that the exclusionary regulation bears a substantial relationship to the health, safety, morality, or welfare of the public.  R.R. at 602a.  Recognizing that the Township was a participant in the Comprehensive Plan, the trial court determined that the ZHB was required to follow the guidelines of Section 916.1(h) of the MPC.[12]  Section 916.1(h) of the MPC relevantly provides that, where a municipality participates in a comprehensive plan and adopts a zoning ordinance that is generally consistent with

---

[11] The ordinance at issue in *Exeter* prohibited the erection of signs in commercial and industrial districts that exceeded 25 square feet.  *Exeter*, 962 A.2d at 655.  Land Displays, Inc., challenged the ordinance as effectively banning the erection of billboards, which were set at 300 or 672 square feet under national industry standards.  *Id.* at 656.  Our Supreme Court agreed after concluding that a 25-square-foot sign could not function effectively as a billboard.  *Id.* at 662.  As the zoning hearing board made no findings with regard to whether the township's aesthetic and safety concerns warranted the restrictions, the Supreme Court remanded the matter for a determination on that issue.  *Id.* at 663.

[12] 53 P.S. § 10916.1(h), added by the Act of December 21, 1988, P.L. 1329.

the provisions of the comprehensive plan, when a party challenges the validity of the zoning ordinance, the zoning hearing board "*shall consider* the availability of uses" under the zoning ordinances of other municipalities within a reasonable geographic area that also participate in the comprehensive plan. 53 P.S. § 10916.1(h) (emphasis added). The zoning hearing board "shall not limit its consideration" to the zoning ordinance of the municipality whose zoning ordinance is being challenged. *Id.*

The trial court opined that Section 916.1(h) of the MPC required the ZHB to conduct an analysis regarding the availability of uses under the ordinances of the other municipalities participating in the Comprehensive Plan.[13] R.R. at 603a. As the ZHB failed to do so, the trial court remanded the matter to the ZHB "to issue supplemental findings of fact, analyses and conclusions of law as to the application and consideration of Section [916.1(h)]." *Id.* at 604a.

### E. Second ZHB Decision

Upon remand, the ZHB took no additional evidence and adopted its original findings and conclusions, including the grant of site-specific relief.[14] As it pertained to the second prong of the *Exeter* test, the ZHB found that the only testimony presented by the Township at the earlier hearings was the desire to protect the scenic vistas and rural quality of the area. *Id.* at 617a. The ZHB recognized that as a worthy goal but an insufficient reason to justify the Township Ordinance's exclusionary zoning in this matter. *Id.* at 618a.

---

[13] While the trial court merely quoted the language of Section 916.1(h), it was clear the only "use" at issue and to be considered was the installation of cell towers within the Township.

[14] Pursuant to Section 1005-A of the MPC, appeals brought before the trial court pursuant to Section 916.1 of the MPC "shall not be remanded for further hearings . . . ." 53 P.S. § 11005-A, added by the Act of December 21, 1988, P.L. 1329.

9

With regard to Section 916.1(h), the ZHB noted that neither Cellco nor the Township introduced the ordinances of the other municipalities participating in the Comprehensive Plan (Municipal Ordinances). *Id.* at 619a. For this reason, the ZHB claimed it was unable to consider whether the Municipal Ordinances were able to cure the exclusionary defect in the Township Ordinance. *Id.* The ZHB could not determine which party bore the burden of producing the Municipal Ordinances and deferred to the trial court's judgment on this issue. *Id.*

## F. Second Trial Court Decision

The trial court agreed with the ZHB that the Township failed to present sufficient evidence indicating how the cell tower impacted the health, safety, morality, or welfare of the public. R.R. at 640a. As for Section 916.1(h), the trial court determined that once the Comprehensive Plan was introduced, Cellco bore the burden of producing the Municipal Ordinances and proving that the Comprehensive Plan, and the Municipal Ordinances adopted pursuant to that plan, excluded cell towers as a use. *Id.* at 641a. As Cellco did not introduce the Municipal Ordinances, the trial court held that the ZHB erred in concluding that the Township Ordinance, when considered in the context of the Comprehensive Plan, was *de facto* exclusionary. *Id.* As Cellco failed to establish cell towers were *de facto* excluded under the Comprehensive Plan and the Municipal Ordinances, the trial court concluded Cellco was not entitled to site-specific relief and reversed the ZHB. *Id.* at 642a. This appeal followed.[15]

---

[15] This Court's scope of review where the trial court has not taken additional evidence is limited to determining whether the local zoning board committed an error of law or an abuse of discretion. *Segal v. Zoning Hearing Bd. of Buckingham Twp.,* 771 A.2d 90, 94 n.6 (Pa. Cmwlth. 2001). To the extent the issues before this Court rest on our interpretation of the MPC, they present a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Newtown Square East, L.P. v. Twp. of Newtown*, 101 A.3d 37, 42 (Pa. 2014).

10

## II. Issues

On appeal, Cellco argues that the trial court erred in reversing the ZHB where the substantial and uncontroverted evidence established a *de facto* exclusion of cell towers under the Township Ordinance. Cellco further argues the trial court erred in applying Section 916.1(h) to Cellco's ordinance challenge and imposing upon Cellco the burden of producing the Municipal Ordinances.

## III. Analysis

Zoning ordinances are presumed to be valid and constitutional. *Macioce*, 850 A.2d at 887. The party challenging the constitutional[16] validity of a zoning ordinance has the heavy burden of establishing its invalidity. *McGonigle v. Lower Heidelberg Twp. Zoning Hearing Bd.,* 858 A.2d 663, 668 (Pa. Cmwlth. 2004). To overcome this presumption of constitutionality, the challenger must demonstrate that the ordinance totally excludes an otherwise legitimate use. *Macioce,* 850 A.2d at 887. A *de facto* exclusion exists where an ordinance permits a use on its face but, when applied, acts to prohibit the use throughout the municipality. *Id.* at 888. As discussed earlier, the two-part test established in *Exeter* requires the party challenging the constitutionality of an ordinance to demonstrate it completely excludes the proposed use. *Exeter*, 962 A.2d at 661. Once the challenger has successfully demonstrated the proposed use is excluded under the ordinance, the burden shifts to the municipality to present evidence demonstrating the exclusionary

---

[16] Article I, section 1 of the Pennsylvania Constitution protects a citizen's right to the enjoyment of private property; governmental interference with this right is restricted by the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution. *Surrick v. Zoning Hearing Bd. of Upper Providence Twp.*, 382 A.2d 105, 107-08 (Pa. 1977); Pa. Const. art. I, § 1; U.S. Const. amends. V, XIV. *See also Appeal of Girsh*, 263 A.2d 395, 397 n.3 (Pa. 1970) (an individual should be able to utilize his own land as he sees fit; while zoning is, in general, a proper exercise of police power which can permissibly limit an individual's property rights, use of that police power cannot be unreasonable).

regulation bears a substantial relationship to the health, safety, morality, or welfare of the public. *Id.*

While our standard of review in zoning matters where the trial court has not taken additional evidence is generally limited to determining whether the local zoning board committed an error of law or an abuse of discretion, because this Court is faced with interpreting several provisions of the MPC, our standard of review is *de novo* and our scope of review is plenary. *Newtown Square East*, 101 A.3d at 42; *Segal*, 771 A.2d at 94 n.6.

**A. *De Facto* exclusion under *Exeter***

Cellco argues that the trial court erred in reversing the ZHB where the evidence plainly establishes the Township Ordinance effectuated a *de facto* exclusion of cell towers within the Township. Cellco notes that the trial court, in its first decision, agreed with the ZHB that the Township Ordinance excluded cell towers as a use. With regard to the second part of the *Exeter* test, Cellco asserts the testimony of the Township's sole witness, Mr. Giannini, established that the exclusion in the Township Ordinance was driven by the Township's desire to protect its scenic views. Consequently, Cellco maintains that the Township failed to present evidence that the limitations imposed on cell towers by the Township Ordinance were related to public health, safety, morality, or welfare issues in the Township.

Cellco further argues that Section 916.1(h) of the MPC is not applicable and, for this reason, the trial court erred in holding that Cellco was required to prove that the Municipal Ordinances were likewise exclusionary of cell towers. According to Cellco, Section 916.1(h) only applies when an ordinance is challenged as exclusionary on the basis that it does not provide a "fair share" of land within the municipality for the proposed use. Cellco's Br. At 23. Once the trial court

determined that a *de facto* exclusion of cell towers existed under the *Exeter* test, Cellco contends, no additional analysis was required under Section 916.1(h) of the MPC.

The principle of "fair share" requires local political units to provide land-use regulations which meet the needs of all categories of people who may desire to live within their boundaries. *Surrick v. Zoning Hearing Bd. of the Twp. of Upper Providence*, 382 A.2d 105, 108 (Pa. 1977).[17] Cellco suggests that *In re Petition of Dolington Land Group*, 839 A.2d 1021 (Pa. 2003), "addressed the interplay between the ["fair share"] analysis and Section 916.1(h)." Cellco's Br. At 19.

We cannot agree with Cellco's interpretation of *Dolington*, as the Supreme Court expressly declined to address the relationship, if any, between the "fair share" analysis outlined in *Surrick* and Section 916.1(h). *Dolington*, 839 A.2d at 1029-30. The fair share analysis in *Surrick* involves application of a three-part test for which a court must first look to whether the municipality whose ordinance is subject to challenge is located in an area ripe for development and population growth, or within the "path of urban-suburban growth." *Surrick*, 382 A.2d at 108, 110. The municipality's proximity to a large city and its projected population growth figures are factors to be considered in answering this inquiry. *Id.* at 110. The issue in *Dolington* concerned whether a joint zoning ordinance (JZO) adopted by several municipalities excluded the development of multi-family dwellings by means of "fair share" exclusionary zoning. *Dolington*, 839 A.2d at 1026. The party challenging the JZO as exclusionary argued that the language in Section 916.1(h)

---

[17] The Supreme Court concluded the "fair share" principle was violated in *Surrick*, and the ordinance unconstitutionally exclusionary, where it limited development of apartments to 1.14% of the township's land and permitted more than a dozen other uses on this fraction of land. *Surrick*, 382 A.2d at 111.

13

required the Supreme Court to consider all municipalities participating in the JZO, not just the municipality in which the subject property was located. *Id.* at 1027. Applying the first part of the test from *Surrick*, whether the municipality lay within the "path of growth," the Supreme Court noted that the municipality was located 37 miles from Philadelphia and 18 miles from Trenton, New Jersey. *Id.* at 1029. No major highways connected the municipality to those cities and no major employers were located there or within the surrounding communities. *Id.* As the municipality was not within the "path of growth," the Supreme Court declined to further address whether the *Surrick* test should be applied to Section 916.1(h). *Id.* at 1029-30.[18]

Prior decisions of this Court have called into question whether the Supreme Court intended the fair share analysis to apply outside the residential context, given that the decision in *Surrick* arose from a history of zoning regulations that excluded lower income residential development by suburban municipalities. *Smith v. Hanover Zoning Hearing Bd.*, 78 A.3d 1212, 1221 (Pa. Cmwlth. 2013). Moreover, the factors set forth in *Surrick* are specific to residential zoning. *Id. See also Hanson Aggregates Pa., Inc. v. Coll. Twp. Council*, 911 A.2d 592, 598 n.6 (Pa. Cmwlth. 2006) (per *Surrick*, zoning ordinances must provide a variety of *housing opportunities* so people are not excluded from living in a community due to race, class or economic hardship); *LaRock v. Bd. of Supervisors of Sugarloaf Twp.*, 866 A.2d 1208, 1212 (Pa. Cmwlth. 2005) (fair share doctrine enunciated in *Surrick* focused on the responsibilities of communities to provide a variety of *housing opportunities*).

---

[18] Because the JZO made adequate provision for the future development of multi-family dwellings, the Supreme Court concluded it did not unconstitutionally exclude that type of housing. *Dolington*, 839 A.2d at 1037.

Beyond its misapprehension of the holding in *Dolington*, Cellco cites no legal authority to support its argument that Section 916.1(h) is only pertinent to fair share exclusionary zoning. As previously stated, Section 916.1(h) of the MPC provides as follows:

> Where municipalities have adopted a multimunicipal comprehensive plan pursuant to Article XI . . . and all municipalities participating in the multimunicipal comprehensive plan have adopted and are administering zoning ordinances generally consistent with the provisions of the multimunicipal comprehensive plan and a challenge is brought to the validity of a zoning ordinance of a participating municipality involving a proposed use, then the zoning hearing board . . . **shall consider the availability of uses** under zoning ordinances within the municipalities participating in the multimunicipal comprehensive plan within a reasonable geographic area and **shall not limit its consideration** to the application of the zoning ordinance on the municipality whose zoning ordinance is being challenged.

53 P.S. § 10916.1(h) (emphasis added).

The Supreme Court in *Exeter* was not interpreting an ordinance adopted pursuant to a comprehensive plan and was thus not concerned with application of Section 916.1(h). As such, *Exeter* cannot be read as prohibiting any consideration of the Municipal Ordinances by the ZHB or the trial court.

Moreover, Cellco misconstrues the trial court's conclusions as to the exclusionary effect of the Ordinance and the ZHB's findings in that regard. The trial court acknowledged that, *but for the existence of the Comprehensive Plan*, it could have affirmed the ZHB's conclusion that the Ordinance effected a *de facto* exclusion of cell towers in the Township. R.R. at 640a. In light of the Comprehensive Plan,

15

however, the trial court recognized the need for further analysis pursuant to Section 916.1(h). *Id.*

Cellco does not dispute that the Township Ordinance was adopted to further the policies and goals of the Comprehensive Plan. The express language of Section 916.1(h) required the ZHB to consider the available uses for wireless communication facilities under the Municipal Ordinances following Cellco's challenge to the Township Ordinance. In the absence of such consideration, the trial court did not err in concluding that the evidence did not support the ZHB's grant of site-specific relief.

## B. Burden of Production

Next, we address whether the trial court erred in imposing upon Cellco the burden of producing the Municipal Ordinances. As to that issue, we disagree with the trial court's conclusion that Cellco was obligated to introduce the Municipal Ordinances in furtherance of the analysis required under Section 916.1(h).

At the outset, we are compelled to point out that the trial court's remand of this matter to the ZHB for supplemental findings of fact is governed by Section 1005-A of the MPC, which relevantly provides that, when "proper consideration of the land use appeal requires the presentation of additional evidence," the trial court may remand the case to the zoning hearing board whose decision was brought up for review, "***provided that appeals brought before the court pursuant to section 916.1 shall not be remanded for further hearings*** . . . ." 53 P.S. § 11005-A (emphasis added). Given this language, it was the trial court's obligation, not the ZHB's, to take additional evidence on this issue. Reference to this pertinent language from the MPC is notably absent from the arguments presented by the parties as well as the opinions of the trial court.

16

The parties and trial court likewise fail to discuss the trial court's obligation under Section 1006-A(b.1)[19] of the MPC to consider the Municipal Ordinances following the Township's appeal. In language mirroring that of Section 916.1(h), Section 1006-A(b.1) provides that, where a challenge is brought to the validity of a zoning ordinance of a municipality participating in a multimunicipal comprehensive plan, "*the court shall consider the availability of uses*" under the ordinances of other participating municipalities "*within a reasonable geographic area. . . .*" 53 P.S. § 11006-A(b.1) (emphasis added). It is clear from the record, and the trial court's second decision, that no such consideration took place.

Furthermore, we are hard-pressed to understand the trial court's singular focus on Cellco's failure to produce the Municipal Ordinances given that, in an exclusionary zoning challenge, the ordinance on its face permits the proposed use. *Macioce*, 850 A.2d at 888. The exclusionary nature of the ordinance is only apparent when applied. *Id.* In demonstrating that the Township Ordinance excluded cell towers as a use, Cellco's witnesses testified as to the efforts they made to locate a suitable location within the LI and LLI districts upon which they could install the proposed cell tower and antennae. Mr. Martinelli, for example, explained why placement of the cell antennae on existing structures within the Township was not feasible and Mr. Fischer testified as to the impact the Township's topography had on a cell tower's ability to provide the necessary coverage. It stands to reason that Cellco must likewise develop the record to establish the Municipal Ordinances exclude cell towers as a use.

It is not clear why the trial court did not fulfill its appellate responsibility given the express language of Section 1006-A(b.1) of the MPC. As such, we are

---

[19] Section 1006-A of the MPC, generally, establishes the relief a trial court may order following appeal. 53 P.S. § 11006-A.

17

constrained to remand this matter to the trial court to take additional evidence on the availability of cell towers as a use under the Municipal Ordinances within a reasonable geographic area, as mandated by Section 1006-A(b.1).

While we have concluded a remand to the trial court is required in this matter, we are not entirely persuaded that the Township Ordinance unconstitutionally excludes all cell towers as a use within the Township or if it merely impacts Cellco's ability to place a cell tower in the location that best serves Cellco's business needs. While Mr. Martinelli's testimony indicates that the area within Cellco's search ring lacks reliable coverage *by Cellco*, there is no evidence to suggest that other wireless providers are similarly unable to provide reliable coverage in that area or that they are also *de facto* excluded from installing cell towers within the Township.

## IV. Conclusion

For the reasons set forth herein, we vacate the order of the trial court and remand to the trial court for further development of the record and consideration of the Municipal Ordinances within a reasonable geographic area, pursuant to Section 1006-A(b.1) of the MPC.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Salford Township  : 
                                          :  
         v.                      :  Nos. 883 and 1162 C.D. 2019  
                                            :  
Zoning Hearing Board of Upper  : 
Salford Township and Cellco  : 
Partnership d/b/a Verizon Wireless  : 
                                            :  
Appeal of: Cellco Partnership d/b/a  : 
Verizon Wireless  : 

## **O R D E R**

AND NOW, this 9th day of July, 2020, the August 12, 2019 order of the Court of Common Pleas of Montgomery County (trial court) is hereby vacated, and this matter is remanded to the trial court for consideration of the availability of uses under the ordinances of other municipalities within a reasonable geographic area that participate in the Indian Valley Regional Comprehensive Plan, as required by Section 1006-A(b.1) of the Pennsylvania Municipalities Planning Code.[1]

Jurisdiction is relinquished.

_____
ELLEN CEISLER, Judge

---

[1] The Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of June 22, 2000, P.L. 483, 53 P.S. § 11006-A(b.1).